## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ADAM COOKE, derivatively on behalf of HARBOR DIVERSIFIED, INC., | C.A. No. _____ |
| Plaintiff, | **Jury Trial Demanded** |
| v. | |
| RICHARD A. BARTLETT, NOLAN BEDERMAN, KEVIN J. DEGEN, CHRISTINE R. DEISTER, GREGG GARVEY, and LIAM MACKAY, | |
| Defendants, | |
| and | |
| HARBOR DIVERSIFIED, INC., | |
| Nominal Defendant. | |

## <u>VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT</u>

**INTRODUCTION**

Plaintiff Adam Cooke ("Plaintiff"), by and through his counsel, derivatively on behalf of Nominal Defendant Harbor Diversified, Inc. ("Harbor Diversified" or the "Company"), submits this Verified Stockholder Derivative Complaint against Defendants and alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his/her counsel's investigation, which included, *inter alia*, review and analysis of (i) regulatory filings made by Harbor Diversified with the United States Securities and Exchange Commission ("SEC"); (ii) press releases issued and disseminated by Harbor Diversified; (iii) court submissions in a securities class action lawsuit against certain officers and members of the Company's Board of Directors (the "Board") alleging issuance of false and misleading statements of material fact and the omission of material facts necessary to make other statements made not misleading, between May 10, 2022 and March 29, 2024 (the "Relevant Period") with respect to Harbor Diversified's business, operations, and prospects; and (iv) other publicly available information concerning Harbor Diversified.

**NATURE OF THE ACTION**

1.      This is a stockholder derivative action asserted on behalf of Nominal Defendant Harbor Diversified against certain officers and the members of the Company's Board for the claims asserted herein to recover damages caused to the Company as described herein.

2.      Harbor Diversified describes itself as a non-operating holding company that is the parent of a consolidated group of subsidiaries, including AWAC Aviation, Inc. ("AWAC"), which is the sole member of Air Wisconsin Airlines LLC ("Air Wisconsin"), a regional air carrier. Harbor Diversified is also the direct parent of three other subsidiaries: (1) Lotus Aviation Leasing,

1

LLC ("Lotus"), which leases flight equipment to Air Wisconsin; (2) Air Wisconsin Funding LLC ("AWF"), which provides flight equipment financing to Air Wisconsin; and (3) Harbor Therapeutics, Inc. ("Therapeutics"), which is a non-operating entity with no material assets. The Company offers transportation, flight equipment financing, and flight equipment leasing services.

3.     This action alleges that during the Relevant Period, the Individual Defendants (defined herein) made false and misleading statements regarding the Company's internal controls, particularly concerning revenue recognition and the integrity of its financial statements. The Individual Defendants repeatedly assured investors that Harbor Diversified maintained adequate internal controls and that the Board, particularly through its Audit Committee, provided effective oversight of the Company's financial reporting and risk management processes.

4.     However, on March 29, 2024, Harbor Diversified filed a Form 8-K with the SEC revealing that its previously issued financial statements for the year ended December 31, 2022, and the first three quarters of both 2022 and 2023 could no longer be relied upon due to misstatements. The Company also disclosed a material weakness in its internal controls over financial reporting.

5.     This Action asserts that the Individual Defendants breached their fiduciary duties to the Company by:

     a)    Failing to implement and maintain adequate internal controls over the Company's financial reporting and revenue recognition practices;

     b)    Making or allowing the Company to make false and misleading statements regarding the effectiveness of its internal controls and the accuracy of its financial statements;

c)      Failing to properly oversee the Company's financial reporting and risk management processes, despite their assurances to the contrary; and

d)      Exposing the Company to significant financial and reputational harm, including potential legal liabilities and regulatory scrutiny.

6.      As a direct and proximate cause of the Individual Defendants' (defined below) breaches of fiduciary duty and violations of securities laws, Harbor Diversified has suffered and will continue to suffer substantial damages, including costs associated with restating its financial statements, potential regulatory fines and penalties, litigation expenses, and loss of investor confidence.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under Sections 10(b) and 20D of the Securities Exchange Act and SEC Rule 10b-5 promulgated thereunder.  The Court has supplemental jurisdiction over the pendent state law claims pursuant to 28 U.S.C. § 1367(a) because the state law claims form part of the same case or controversy.  This action is not a collusive one designed to confer jurisdiction on a court of the United States that it would not otherwise have.

8.      This Court has jurisdiction over each Defendant because they reside in this District or have sufficient minimum contacts with this District to render the exercise of jurisdiction by the Court permissible under traditional notions of fair play and substantial justice.  The Court has personal jurisdiction over the Nominal Defendant because it is authorized to do business in this state.

9.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein, including the Defendants' primary

participation in the wrongful acts detailed herein and violation of fiduciary duties owed to Harbor Diversified.  Venue is also proper pursuant to 28 U.S.C. § 1401 because Nominal Defendant Harbor Diversified could have sued the same Defendants in this District.

**PARTIES**

10.     Plaintiff is a Harbor Diversified stockholder and has continuously held Harbor Diversified stock from the time of the wrongdoing alleged herein until the present.  Plaintiff will fairly and adequately represent Harbor Diversified's interest in this action.

11.     Nominal Defendant Harbor Diversified is incorporated under the laws of the state of Delaware, and its principal executive offices are located at W6390 Challenger Drive, Suite 203, Appleton, Wisconsin 54914-9120.  Harbor Diversified's common stock trades on the Over-the-Counter ("OTC") Market under the symbol ticker HRBR.

12.     Defendant Richard A. Bartlett ("Bartlett") has served on the Company's Board since August 2011.  Defendant Bartlett served on the board of directors of the Company's subsidiary, Air Wisconsin for more than 25 years.

13.     Defendant Nolan Bederman ("Bederman") has served on the Board and on the board of directors of Air Wisconsin since March 2019.

14.     Defendant Kevin J. Degen ("Degen") has served on the Board and on Air Wisconsin's board of managers since March 2019.

15.     Christine R. Deister ("Deister") has served as the Company's Chief Executive Officer ("CEO") and Secretary since March 2020.  She has also served as Chief Financial Officer ("CFO") and Secretary of Lotus, CFO and Secretary of AWF, and President, Secretary, and Director of Therapeutics since April 2020.  She has also served as EVP and Director of AWAC since at least 2020.  Defendant Deister has also served as Vice President ("VP") of Special Projects

for Air Wisconsin since April 2020.  Defendant Deister served as President and CEO of Air Wisconsin from April 2015 until March 2019 and as CEO until March 2020.  Defendant Deister served as Chief Commercial Officer of Air Wisconsin from November 2014 to April 2015 and as its EVP and CFO from November 2004 to November 2014.

16.     Defendant Gregg Garvey ("Garvey") has served as Air Wisconsin's Senior VP, Chief Accounting Officer, and Treasurer since October 2018 and has worked with Air Wisconsin in various roles since 1999.  He also serves as Vice President, CFO, and Treasurer of AWAC.

17.     Defendant Liam Mackay ("Mackay") has served as Air Wisconsin's CFO since January 1, 2021.  Prior to joining Air Wisconsin, Defendant Mackay served as Director, United Express Commercial Strategy at United Airlines, Inc. ("United") since 2019.  Previously, he also served as Director, United Express Regional Partner Management at United from 2016 to 2019 and as its Senior Manager, Financial Analysis from 2011 to 2016.

18.     The following Defendants are collectively referenced herein as the "Individual Defendants": Bartlett, Bederman, Degen, Deister, Garvey, and Mackay.

19.     The following Individual Defendants are collectively referenced herein as the "Director Defendants": Bartlett, Bederman, and Degen.

20.     The following Individual Defendants are collectively referenced herein as the "Officer Defendants": Deister, Garvey, and Mackay.

21.     The following Individual Defendants are collectively referenced herein as the "Audit Committee Defendants": Bederman and Degen.

22.     The following Individual Defendants are collectively referenced herein as the "Securities Class Action Defendants": Deister and Mackay

23.     The Individual Defendants and Nominal Defendant are collectively referenced herein as "Defendants."

## THE INDIVIDUAL DEFENDANTS OWE FIDUCIARY DUTIES TO THE COMPANY AND ITS STOCKHOLDERS

24.     At all times relevant to this case, the conduct of the Individual Defendants was governed by well-recognized rules to protect the Company and its Stockholders, the members of the public who had invested in Harbor Diversified.

25.     Because of their positions as officers and/or directors of the Company and their ability to control its business and corporate affairs, the Individual Defendants owed the Company and its stockholders the fiduciary obligations of good faith, loyalty, and candor and were and are required to use their utmost ability to control and manage the Company in a fair, just, honest, and equitable manner.

26.     The Individual Defendants were and are required to act in furtherance of the best interests of the Company and its stockholders to benefit all stockholders equally and not in furtherance of their personal interest or benefit.

27.     Each of the Company's directors owes to the Company and its stockholders fiduciary duties of care and loyalty, including good faith, oversight, and candor, to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets.

28.     Because of their positions of control and authority as directors and/or officers of the Company, the Individual Defendants were able to and did, directly and/or indirectly, exercise control over the wrongful acts alleged herein.

29.     To discharge their duties, the Individual Defendants were required to exercise reasonable and prudent supervision over the management, policies, practices, and controls of the

Company.  By virtue of such duties, the officers and directors of Harbor Diversified were required to do the following:

a)   Ensure that the Company complied with its legal obligations and requirements, including acting only within the scope of its legal authority and disseminating truthful and accurate statements to the SEC and the investing public;

b)   Conduct the affairs of the Company in a lawful, efficient, and business-like manner to make it possible for the Company to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

c)   Properly and accurately inform investors and analysts as to the true financial condition of the Company at any given time, make accurate statements about the Company's financial results and prospects, and ensure that the Company maintained an adequate system of financial controls such that the Company's financial reporting would be true and accurate at all times;

d)   Remain informed as to how the Company conducted its operations, and, upon notice of imprudent or unsound conditions or practices, make reasonable inquiry into the nature and cause of such conditions and practices, correct such conditions or practices, and make such disclosures as necessary to comply with federal and state securities laws; and

e)   Ensure that the Company was operated in a diligent, honest, and prudent manner in compliance with all applicable federal, state, and local laws, rules, and regulations.

30.     The Individual Defendants knowingly violated their obligations as directors and officers of the Company, acting without good faith and consciously disregarding their duties to the Company and its Stockholders despite their knowledge of the risk of serious injury to the Company.

31.     Because of their positions of control and authority, the Individual Defendants were able to exercise control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by Harbor Diversified.

32.     The Company's full year 2022 report provides filed on Form 10-K with the SEC[1] as follows with respect to the Board's role in oversight:

> The [Board] provided oversight with respect to our management of risk, both as a whole and through the audit committee.  The [Board] typically reviews and discusses with management at each of its regular meetings information presented by management relating to our financial and operational results and outlook, including risks related to our business and operations.  The audit committee oversees the management of risk as part of its responsibilities related to the oversight of the Company's independent registered public accounting firm, and the review of the Company's financial results and internal control over financial reporting.

33.     According to the 2022 Form 10-K, the Board has adopted a Code[] of Business Conduct and Ethics ("Code of Ethics"):

> We have adopted a [Code of Ethics] applicable to our principal executive officer, principal financial officer, principal accounting officer and other officers that have a financial or operational oversight role, which is intended to comply with the requirements of Item 406 of Regulation S-K.  We expect that any amendment to the Code of Ethics, or any waivers of its requirements applicable to our executive officers or directors, will be disclosed in the Company's future filings under the Exchange Act.  The Code of Ethics was previously filed as an exhibit to our SEC reports and is incorporated by reference to this [2022 Form 10-K] as Exhibit 14.1.

---

[1] Harbor Diversified, Inc. Annual Report (Form 10-K) (April 3, 2023)("2022 Form 10-K").

34.     The Code of Ethics, incorporated by reference to the 2022 Form 10-K, states as follows:

**I. Purpose**

*     *     *

- As a general matter, this Code is designed to deter wrongdoing and promote:

- Honest and ethical conduct, including the ethical handling of actual or apparent conflicts of interest between personal and professional relationships;

- Full, fair, accurate, timely and understandable disclosure in reports and documents filed by the Company with, or submitted to, the SEC and in the Company's other public communications;

- Compliance with applicable laws, rules, regulations and the listing standards of any national securities exchange on which the Company's securities are listed for trading ("listing standards");

- Prompt internal reporting of violations of this Code in the manner described herein; and

- Accountability for adherence to this Code.

**II. Applicability**

This Code applies to the Chief Executive Officer, Chief Financial Officer, Chief Accounting Officer and Controller of the Company, and any other officer of the Company (or any of its subsidiaries) that is performing similar functions or that is performing a financial oversight role (collectively, the "***Senior Financial Officers***").  The Senior Financial Officers are also bound by any other corporate governance policies and procedures that have been, or may hereafter be, adopted by the Company (or any of its subsidiaries) and are applicable to the Company's officers or employees (collectively, the "***Governance Policies***").  Nothing in this Code is intended to limit the requirements or obligations imposed on the Senior Financial Officers by the Governance Policies.

By accepting this Code, each Senior Financial Officer agrees that he or she will promote high standards of ethical business conduct and compliance with applicable laws, rules, regulations and listing standards, including by adhering to the principles and responsibilities set forth in this Code.

In addition, part of each Senior Financial Officer's ethical responsibility is to help enforce this Code and encourage others to comply with this Code. Each Senior Financial Officer should promptly report violations or suspected violations of this Code to the Audit Committee of the Board (the "***Audit Committee***").

### III. Principles and Responsibilities

### A.  Standard of Conduct

Each Senior Financial Officer has a duty to comply with applicable laws, rules, regulations and listing standards; act with honesty and integrity in all dealings with the Company and any of its constituents; and use care and diligence in performing his or her responsibilities to the Company.  Each Senior Financial Officer also has a duty to advocate compliance with these principles by other employees.

### B. Relationship with Independent Auditors

Each Senior Financial Officer has a duty to work cooperatively with the Company's independent auditors in the conduct of the audit of the Company's annual financial statements, the review of the Company's quarterly financial statements, the evaluation of the Company's internal controls, and the preparation of reports and documents filed by the Company with, or submitted to, the SEC.

### C. Company Disclosures

Each Senior Financial Officer shall be responsible for full, fair, accurate and timely disclosure in the reports and documents that the Company files with, or submits to, the SEC and in other public communications made by the Company. Each Senior Financial Officer must promptly bring to the attention of the Audit Committee any material information that he or she may become aware of that is likely to materially affect the timing, accuracy or completeness of disclosures made by the Company in its SEC filings or other public communications.

### D. Internal Controls/ Fraud

Each Senior Financial Officer must promptly bring to the attention of the Audit Committee any information he or she may have or become privy to concerning (i) significant deficiencies in the design or operation of internal controls which could adversely affect the Company's ability to record, process, summarize and report financial data, and (ii) any fraud, whether or not material, that involves management or other employees who have a significant role in the Company's financial reporting, disclosures or internal controls.

## THE AUDIT COMMITTEE
## <u>DEFENDANTS OWE ADDITIONAL DUTIES</u>

35.     The Audit Committee Charter (the "Audit Charter") places additional duties and responsibilities upon the members of the Board's Audit Committee, which consisted of Bederman and Degen during the Relevant Period.

36.     Pursuant to the 2022 Form 10-K, the Company has a standing Audit Committee that "oversees [Harbor Diversified's] corporate accounting and financial reporting process and the audits of the Company's financial statements."   The 2022 Form 10-K stated that the Audit Committee's principal functions are as follows:

> (i)     oversee the integrity of the Company's financial statements, the audits of the Company's financial statements conducted by the Company's independent registered public accounting firm ("Independent Auditors"), the qualifications, independence and performance of the Independent Auditors, and compliance with legal, regulatory and disclosure requirements relating to the Company's accounting and financial reporting processes;

> (ii)    review the Company's internal control over financial reporting; and

> (iii)   facilitate communication among the Independent Auditors, the Company's financial and senior management, and the board of directors of the Company.

37.     The 2022 Form 10-K further states that the Audit Committee is "is directly responsible for oversight of the work of the Independent Auditors, including resolution of any disagreements between management and the Independent Auditors regarding financial reporting or the application of accounting policies."   The "oversight includes review and discussion with management and the Independent Auditors of" the following:

> (i)     the Company's financial statements and the reports or information delivered to the audit committee by the Independent Auditors; and

> (ii)    analyses prepared by management and the Independent Auditors setting forth significant financial reporting issues and judgments made in

connection with the preparation of the financial statements, as well as assessment of the Company's system of internal control over financial reporting.

38.     Moreover, the Audit Committee is also responsible for the following:

[T]he review, approval and monitoring of transactions involving the Company and any "related persons" (directors or executive officers, or stockholders owning 5.0% or greater of our outstanding capital stock, or any of their respective immediate family members) that involve amounts exceeding $120,000 in which a related person has a direct or indirect material interest.

### **BACKGROUND**

39.     Harbor Diversified describes itself as a non-operating holding company that is the parent of a consolidated group of subsidiaries, including AWAC, which is the sole member of Air Wisconsin Airlines, a regional air carrier.  Harbor Diversified is also the direct parent of three other subsidiaries: (1) Lotus, which leases flight equipment to Air Wisconsin, (2) AWF, which provides flight equipment financing to Air Wisconsin, and (3) Therapeutics which is a non-operating entity with no material assets.

40.     Harbor Diversified's SEC filings describe the crucial role of regional jets in the nation's air transportation system.  These aircraft serve two main purposes: connecting smaller communities to larger urban areas and feeding passengers into major airlines' domestic and international hubs.  Their lower operational costs and the competitive nature of capacity purchase agreements make them valuable assets for major airlines.

41.     The importance of regional airlines is underscored by data from the 2022 Regional Airline Association Annual Report, which provided the following statistics for 2021:

      a)     Regional airlines operated 41% of all scheduled passenger flights in the United States.

b)     They were the sole providers of scheduled air service at 67% of U.S. airports.

c)     Air Wisconsin, a subsidiary of Harbor Diversified, ranked as the ninth-largest regional airline in the country based on passenger numbers. It accounted for about 2.78% of all passengers transported by U.S. regional carriers.

42.    These statistics highlight the significant market presence and essential function of regional airlines, including Air Wisconsin, in the broader U.S. air travel ecosystem.

43.    In 2022, Air Wisconsin operated a fleet of 63 CRJ-200 regional jets under a capacity purchase agreement with United Airlines, Inc. ("United"), its exclusive major airline partner (the "United Agreement"). The United Agreement stipulated that United would buy the capacity of Air Wisconsin's jets, which were then operated under the United Express brand.

44.    Air Wisconsin's operations were concentrated at two of United's primary domestic hubs: Chicago O'Hare and Washington-Dulles International Airports. The significance of this partnership is evident from the fact that over 99.9% of Harbor Diversified's operating revenues in both 2021 and 2022 were generated from activities related to this capacity purchase agreement with United.

45.    The United Agreement highlights the critical nature of the United partnership to Air Wisconsin's operations and, by extension, to Harbor Diversified's financial performance during this period.

46.    The United Agreement offers a structured compensation model with several key components, including fixed daily payments for each aircraft under the agreement, set fees for each departure and flight hour, reimbursement for specific operational costs, and additional

payments based on meeting certain scheduling targets.  The United Agreement purports to provide Air Wisconsin with a degree of financial stability, shielding it from common industry volatilities such as fuel price fluctuations, ticket price changes, and passenger number variations.

47.     Under the United Agreement, Air Wisconsin operates as an extension of United, using United's branding, including logos, service marks, and aircraft livery.  United maintains control over critical aspects of the operation, including route planning, pricing strategies, seat inventory management, marketing initiatives, and flight scheduling.  Furthermore, United provides essential support services to Air Wisconsin, such as ground operations and airport gate access. This structure allows Air Wisconsin to function as an integrated part of United's network while benefiting from a more predictable revenue stream and operational support.

## DEFENDANTS BREACH THEIR DUTIES
## TO THE COMPANY AND ITS STOCKHOLDERS

48.     Through a series of communications, Defendants made materially false and misleading statements and failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, the Individual Defendants made false and misleading statements regarding the Company's internal controls, particularly concerning revenue recognition and the integrity of its financial statements.  The Individual Defendants repeatedly assured investors that Harbor Diversified maintained adequate internal controls and that the Board, particularly through its Audit Committee, provided effective oversight of the Company's financial reporting and risk management processes.

49.     In truth, the Individual Defendants breached their fiduciary duties to the Company by:

a)     Failing to implement and maintain adequate internal controls over the Company's financial reporting and revenue recognition practices;

      b)      Making or allowing the Company to make false and misleading statements regarding the effectiveness of its internal controls and the accuracy of its financial statements;

      c)      Failing to properly oversee the Company's financial reporting and risk management processes, despite their assurances to the contrary; and

      d)      Exposing the Company to significant financial and reputational harm, including potential legal liabilities and regulatory scrutiny.

50.     Following the close of trading on May 9, 2022, Harbor Diversified submitted its first quarter 2022 financial report on Form 10-Q to the SEC.[2]  The Q1 2022 Form 10-Q covered the Company's financial performance for the period ending March 31, 2022.  The filing included Sarbanes-Oxley Act ("SOX") certifications, which were signed by Defendants Deister and Mackay.   These certifications affirmed three key points: (i) the accuracy of the financial information presented in the report, (ii) the  disclosure of any significant changes to the Company's internal financial control systems, and (iii) the reporting of any fraudulent activities.  By signing these certifications, Defendant Deister and Mackay personally vouched for the integrity of the Company's financial reporting and internal control mechanisms for the quarter in question.

51.     The Q1 2022 Form 10-Q included a statement pursuant to Rule 15d-15(b) of the Exchange Act that assured investors that the Individual Defendants determined that Harbor Diversified's methods for controlling and releasing key information were operating effectively at the end of the quarter and that the Company's systems provided a reasonable level of assurance in terms of their reliability and performance:

> As required by Rule 15d-15(b) under the Exchange Act, our management, including our principal executive officer, principal financial officer and principal

---

[2] Harbor Diversified, Inc., Quarterly Report (Form 10-Q) (May 9, 2022) ("Q1 2022 Form 10-Q").

accounting officer, carried out an evaluation of the effectiveness of the design and operation of our disclosure controls and procedures (as defined in Rule 15d-15(e) under the Exchange Act) as of March 31, 2022, the last day of the period covered by this [the Q1 2022 Form 10-Q].  Based on this evaluation, our management, including our principal executive officer, principal financial officer and principal accounting officer, concluded that, as of March 31, 2022, our disclosure controls and procedures were effective at the reasonable assurance level.

52.     The Q1 2022 Form 10-Q included the following Consolidated Statement of Operations chart containing the Company's revenues:

**Harbor Diversified, Inc. and Subsidiaries**
**Consolidated Statements of Operations (in thousands, except per share amounts)**

| | Three Months Ended March 31, | |
| --- | --- | --- |
| | 2022 | 2021 |
| | (unaudited) | |
| **Operating Revenues** | | |
| Contract revenues | $66,968 | $ 49,756 |
| Contract services and other | 7 | 18 |
| **Total Operating Revenues** | 66,975 | 49,774 |
| **Operating Expenses** | | |
| Payroll and related costs | 26,601 | 22,751 |
| Aircraft fuel and oil | 51 | 13 |
| Aircraft maintenance, materials and repairs | 14,501 | 11,072 |
| Aircraft rent | — | 23 |
| Other rents | 1,613 | 922 |
| Depreciation, amortization and obsolescence | 6,644 | 6,500 |
| Payroll Support Program | — | (27,914) |
| Purchased services and other | 3,765 | 3,150 |
| **Total Operating Expenses** | 53,175 | 16,517 |
| **Income From Operations** | 13,800 | 33,257 |
| **Other (Expense) Income** | | |
| Interest income | 574 | 370 |
| Interest expense | — | (362) |
| Loss on marketable securities | (2,423) | (57) |
| Other, net | 210 | — |
| **Total Other (Expense) Income** | (1,639) | (49) |
| **Net Income Before Taxes** | 12,161 | 33,208 |
| **Income Tax Expense** | 2,898 | 7,983 |
| **Net Income** | $ 9,263 | $ 25,225 |
| Preferred stock dividends | 198 | 198 |
| Net income available to common stockholders | $ 9,065 | 25,027 |
| **Basic Earnings per share** | $   0.19 | $   0.46 |
| **Diluted Earnings per share** | $   0.14 | $   0.35 |
| **Weighted Average Common Shares:** | | |
| Basic | 47,638 | 54,863 |
| Diluted | 64,535 | 71,662 |

*See accompanying condensed notes to unaudited consolidated financial statements.*

53.     The above statements identified in ¶¶ 50-52 were materially false and misleading because the Individual Defendants made false and misleading statements regarding the Company's internal controls, particularly concerning revenue recognition and the integrity of its financial statements.  The Individual Defendants repeatedly assured investors that Harbor Diversified maintained adequate internal controls and that the Board, particularly through its Audit

16

Committee, provided effective oversight of the Company's financial reporting and risk management processes.

54.     In truth, the Individual Defendants breached their fiduciary duties to the Company by:

a)     Failing to implement and maintain adequate internal controls over the Company's financial reporting and revenue recognition practices;

b)     Making or allowing the Company to make false and misleading statements regarding the effectiveness of its internal controls and the accuracy of its financial statements;

c)     Failing to properly oversee the Company's financial reporting and risk management processes, despite their assurances to the contrary; and

d)     Exposing the Company to significant financial and reputational harm, including potential legal liabilities and regulatory scrutiny.

55.     As a result, the Company had to restate the Q1 2022 Form 10-Q revenues stated in paragraph 52 above.

56.     On August 10, 2022, Harbor Diversified submitted its second quarter 2022 financial report on Form 10-Q to the SEC.[3]   The Q2 2022 Form 10-Q covered the Company's financial performance for the period ending June 30, 2022.   The filing included SOX certifications, which were signed by Defendants Deister and Mackay.   These certifications affirmed three key points: (i) the accuracy of the financial information presented in the report, (ii) the disclosure of any significant changes to the Company's internal financial control systems, and (iii) the reporting of

---

[3] Harbor Diversified, Inc., Quarterly Report (Form 10-Q) (August 10, 2022) ("Q2 2022 Form 10-Q").

any fraudulent activities.  By signing these certifications, Defendant Deister and Mackay personally vouched for the integrity of the Company's financial reporting and internal control mechanisms for the quarter in question.

57.    The Q2 2022 Form 10-Q included a statement pursuant to Rule 15d-15(b) of the Exchange Act that assured investors that the Individual Defendants determined that Harbor Diversified's methods for controlling and releasing key information were operating effectively at the end of the quarter and that the Company's systems provided a reasonable level of assurance in terms of their reliability and performance:

> As required by Rule 15d-15(b) under the Exchange Act, our management, including our principal executive officer, principal financial officer and principal accounting officer, carried out an evaluation of the effectiveness of the design and operation of our disclosure controls and procedures (as defined in Rule 15d-15(e) under the Exchange Act) as of June 30, 2022, the last day of the period covered by this Q2 2022 Form 10-Q.  Based on this evaluation, our management, including our principal executive officer, principal financial officer and principal accounting officer, concluded that, as of June 30, 2022, our disclosure controls and procedures were effective at the reasonable assurance level.

58.    The Q2 2022 Form 10-Q included the following Consolidated Statement of Operations chart containing the Company's revenues:

**Harbor Diversified, Inc. and Subsidiaries**

**Consolidated Statements of Operations (in thousands, except per share amounts)**

| | Three Months Ended June 30, | | Six Months Ended June 30, | |
|---|---|---|---|---|
| | 2022 | 2021 | 2022 | 2021 |
| | (unaudited) | | (unaudited) | |
| **Operating Revenues** | | | | |
| Contract revenues | $77,923 | $ 52,845 | $144,891 | $102,601 |
| Contract services and other | 7 | 15 | 14 | 33 |
| **Total Operating Revenues** | 77,930 | 52,860 | 144,905 | 102,634 |
| **Operating Expenses** | | | | |
| Payroll and related costs | 27,694 | 25,012 | 54,295 | 47,763 |
| Aircraft fuel and oil | 34 | 44 | 85 | 57 |
| Aircraft maintenance, materials and repairs | 16,336 | 12,540 | 30,837 | 23,612 |
| Aircraft rent | — | 44 | — | 67 |
| Other rents | 1,657 | 1,263 | 3,270 | 2,185 |
| Depreciation, amortization and obsolescence | 6,674 | 6,499 | 13,318 | 12,999 |
| Payroll Support Program | — | (22,256) | — | (50,170) |
| Purchased services and other | 3,514 | 3,110 | 7,279 | 6,260 |
| **Total Operating Expenses** | 55,909 | 26,256 | 109,084 | 42,773 |
| **Income From Operations** | 22,021 | 26,604 | 35,821 | 59,861 |
| **Other (Expense) Income** | | | | |
| Interest income | 688 | 456 | 1,262 | 826 |
| Interest expense | — | (327) | — | (689) |
| Gain (loss) on marketable securities | (3,602) | 43 | (6,025) | (14) |
| Gain on extinguishment of debt | — | 228 | — | 228 |
| Other, net | 691 | 68 | 901 | 68 |
| **Total Other (Expense) Income** | (2,223) | 468 | (3,862) | 419 |
| **Net Income Before Taxes** | 19,798 | 27,072 | 31,959 | 60,280 |
| **Income Tax Expense** | 4,717 | 6,551 | 7,615 | 14,534 |
| **Net Income** | $15,081 | $ 20,521 | 24,344 | $ 45,746 |
| Preferred stock dividends | 198 | 198 | 396 | 396 |
| Net Income available to common stockholders | $14,883 | $ 20,323 | 23,948 | $ 45,350 |
| **Basic Earnings per share** | $   0.32 | $   0.37 | $   0.51 | $   0.83 |
| **Diluted Earnings per share** | $   0.24 | $   0.28 | $   0.38 | $   0.63 |
| **Weighted Average Common Shares:** | | | | |
| Basic | 46,519 | 54,466 | 47,075 | 54,664 |
| Diluted | 63,019 | 71,455 | 63,773 | 71,613 |

*See accompanying condensed notes to unaudited consolidated financial statements.*

59.     The above statements identified in ¶¶ 56-58 were materially false and misleading because the Individual Defendants made false and misleading statements regarding the Company's internal controls, particularly concerning revenue recognition and the integrity of its financial statements.   The Individual Defendants repeatedly assured investors that Harbor Diversified maintained adequate internal controls and that the Board, particularly through its Audit Committee, provided effective oversight of the Company's financial reporting and risk management processes.

60.     In truth, the Individual Defendants breached their fiduciary duties to the Company by:

a)      Failing to implement and maintain adequate internal controls over the Company's financial reporting and revenue recognition practices;

b)      Making or allowing the Company to make false and misleading statements regarding the effectiveness of its internal controls and the accuracy of its financial statements;

c)      Failing to properly oversee the Company's financial reporting and risk management processes, despite their assurances to the contrary; and

d)      Exposing the Company to significant financial and reputational harm, including potential legal liabilities and regulatory scrutiny.

61.     As a result, the Company had to restate the Q2 2022 Form 10-Q revenues stated in paragraph 58 above.

62.     On November 21, 2022, Harbor Diversified submitted its third quarter 2022 financial report on Form 10-Q to the SEC.[4]  The Q3 2022 Form 10-Q covered the Company's financial performance for the period ending September 31, 2022.  The filing included SOX certifications, which were signed by Defendants Deister and Mackay.  These certifications affirmed three key points: (i) the accuracy of the financial information presented in the report, (ii) the disclosure of any significant changes to the Company's internal financial control systems, and (iii) the reporting of any fraudulent activities.  By signing these certifications, Defendant Deister and Mackay personally vouched for the integrity of the Company's financial reporting and internal control mechanisms for the quarter in question.

---

[4] Harbor Diversified, Inc., Quarterly Report (Form 10-Q) (November 21, 2022) ("Q3 2022 Form 10-Q").

63.     The Q3 2022 Form 10-Q included a statement pursuant to Rule 15d-15(b) of the Exchange Act that assured investors that the Individual Defendants determined that Harbor Diversified's methods for controlling and releasing key information were operating effectively at the end of the quarter and that the Company's systems provided a reasonable level of assurance in terms of their reliability and performance:

> As required by Rule 15d-15(b) under the Exchange Act, our management, including our principal executive officer, principal financial officer and principal accounting officer, carried out an evaluation of the effectiveness of the design and operation of our disclosure controls and procedures (as defined in Rule 15d-15(e) under the Exchange Act) as of September 30, 2022, the last day of the period covered by this [Q3 2022 Form 10-Q].  Based on this evaluation, our management, including our principal executive officer, principal financial officer and principal accounting officer, concluded that, as of September 30, 2022, our disclosure controls and procedures were effective at the reasonable assurance level.

64.     The Q3 2022 Form 10-Q included the following Consolidated Statement of Operations chart containing the Company's revenues:

**Harbor Diversified, Inc. and Subsidiaries**
**Consolidated Statements of Operations (in thousands, except per share amounts)**

| | Three Months Ended September 30, | | Nine Months Ended September 30, | |
| --- | --- | --- | --- | --- |
| | 2022 | 2021 | 2022 | 2021 |
| | (unaudited) | | (unaudited) | |
| **Operating Revenues** | | | | |
| Contract revenues | $68,389 | $ 71,866 | $213,280 | $174,467 |
| Contract services and other | 21 | 21 | 35 | 54 |
| **Total Operating Revenues** | 68,410 | 71,887 | 213,315 | 174,521 |
| **Operating Expenses** | | | | |
| Payroll and related costs | 26,801 | 29,056 | 81,096 | 76,819 |
| Aircraft fuel and oil | 49 | 51 | 134 | 108 |
| Aircraft maintenance, materials and repairs | 17,494 | 13,877 | 48,331 | 37,489 |
| Aircraft rent | — | — | — | 67 |
| Other rents | 1,617 | 1,572 | 4,887 | 3,757 |
| Depreciation, amortization and obsolescence | 6,639 | 6,570 | 19,957 | 19,569 |
| Payroll Support Program | — | (16,146) | — | (66,316) |
| Purchased services and other | 3,310 | 3,684 | 10,589 | 9,944 |
| **Total Operating Expenses** | 55,910 | 38,664 | 164,994 | 81,437 |
| **Income From Operations** | 12,500 | 33,223 | 48,321 | 93,084 |
| **Other (Expense) Income** | | | | |
| Interest income | 840 | 611 | 2,102 | 1,437 |
| Interest expense | — | (138) | — | (827) |
| Loss on marketable securities | (3,749) | (92) | (9,774) | (106) |
| Gain on extinguishment of debt | 53 | 10,135 | 53 | 10,363 |
| Other, net | 885 | 566 | 1,786 | 634 |
| **Total Other (Expense) Income** | (1,971) | 11,082 | (5,833) | 11,501 |
| **Net Income Before Taxes** | 10,529 | 44,305 | 42,488 | 104,585 |
| **Income Tax Expense** | 2,507 | 8,026 | 10,122 | 22,560 |
| **Net Income** | $ 8,022 | $ 36,279 | $ 32,366 | $ 82,025 |
| Preferred stock dividends | 198 | 198 | 594 | 594 |
| Net income available to common stockholders | $ 7,824 | $ 36,081 | $ 31,772 | $ 81,431 |
| **Basic Earnings per share** | $ 0.17 | $ 0.67 | $ 0.68 | $ 1.49 |
| **Diluted Earnings per share** | $ 0.13 | $ 0.51 | $ 0.50 | $ 1.14 |
| **Weighted Average Common Shares:** | | | | |
| Basic | 45,776 | 54,153 | 46,637 | 54,491 |
| Diluted | 62,276 | 71,155 | 63,268 | 71,468 |

*See accompanying condensed notes to unaudited consolidated financial statements.*

65.     The above statements identified in ¶¶ 62-64 were materially false and misleading because the Individual Defendants made false and misleading statements regarding the Company's internal controls, particularly concerning revenue recognition and the integrity of its financial statements.   The Individual Defendants repeatedly assured investors that Harbor Diversified maintained adequate internal controls and that the Board, particularly through its Audit Committee, provided effective oversight of the Company's financial reporting and risk management processes.

66.     In truth, the Individual Defendants breached their fiduciary duties to the Company by:

a)     Failing to implement and maintain adequate internal controls over the Company's financial reporting and revenue recognition practices;

      b)      Making or allowing the Company to make false and misleading statements regarding the effectiveness of its internal controls and the accuracy of its financial statements;

      c)      Failing to properly oversee the Company's financial reporting and risk management processes, despite their assurances to the contrary; and

      d)      Exposing the Company to significant financial and reputational harm, including potential legal liabilities and regulatory scrutiny.

67.      As a result, the Company had to restate the Q3 2022 Form 10-Q revenues stated in paragraph 64 above.

68.      On April 3, 2023, Harbor Diversified submitted its 2022 Form 10-K to the SEC. The 2022 Form 10-K covered the Company's financial performance for the period ending December 31, 2022.  The filing included SOX certifications, which were signed by Defendants Deister and Mackay.  These certifications affirmed three key points: (i) the accuracy of the financial information presented in the report, (ii) the disclosure of any significant changes to the Company's internal financial control systems, and (iii) the reporting of any fraudulent activities. By signing these certifications, Defendant Deister and Mackay personally vouched for the integrity of the Company's financial reporting and internal control mechanisms for the quarter in question.

69.      The 2022 Form 10-K included a statement pursuant to Rule 15d-15(b) of the Exchange Act that assured investors that the Individual Defendants determined that Harbor Diversified's methods for controlling and releasing key information were operating effectively at the end of the quarter and that the Company's systems provided a reasonable level of assurance in terms of their reliability and performance:

      As required by Rule 15d-15(b) under the Exchange Act, our management, under the supervision and with the participation of our principal executive officer, our

principal financial officer and our principal accounting officer, carried out an evaluation of the effectiveness of the design and operation of our disclosure controls and procedures (as defined in Rule 15d-15(e) under the Exchange Act) as of December 31, 2022, the last day of the period covered by this [2022 Form 10-K].  Based on this evaluation, our management, including our principal executive officer, our principal financial officer and our principal accounting officer, concluded that, as of December 31, 2022, our disclosure controls and procedures were effective at the reasonable assurance level.

70.     The 2022 Form 10-K included the following Consolidated Statement of Operations chart containing the Company's revenues:

**Harbor Diversified, Inc. and Subsidiaries**

**Consolidated Statements of Operations (in thousands, except share values)**

| Year ended December 31, | 2022 | 2021 |
|---|---|---|
| **Operating Revenues** | | |
| Contract revenues | $280,737 | $247,519 |
| Contract services and other | 126 | 60 |
| **Total Operating Revenues** | 280,863 | 247,579 |
| **Operating Expenses** | | |
| Payroll and related costs | 109,831 | 106,881 |
| Aircraft fuel and oil | 169 | 171 |
| Aircraft maintenance, materials and repairs | 67,096 | 56,145 |
| Aircraft rent | — | 67 |
| Other rents | 6,582 | 5,375 |
| Depreciation, amortization and obsolescence | 26,327 | 26,552 |
| Purchased services and other | 14,992 | 13,535 |
| Payroll Support Program | — | (66,316) |
| **Total Operating Expenses** | 224,997 | 142,410 |
| **Income From Operations** | 55,866 | 105,169 |
| **Other (Expense) Income** | | |
| Interest income | 7,024 | 4,520 |
| Interest expense | (3) | (847) |
| Loss on marketable securities | (8,826) | (1,158) |
| Gain on extinguishment of debt | 53 | 10,363 |
| Other, net | (11) | — |
| **Total Other (Expense) Income** | (1,763) | 12,878 |
| **Net Income Before Taxes** | 54,103 | 118,047 |
| **Income Tax Expense** | 14,993 | 25,421 |
| **Net Income** | $ 39,110 | $ 92,626 |
| Preferred stock dividends | $    792 | $    792 |
| Net income available to common stockholders | $ 38,318 | $ 91,834 |
| Basic earnings per share | $   0.83 | $   1.69 |
| Diluted earnings per share | $   0.61 | $   1.29 |
| Weighted average common shares: | | |
| Basic | 46,369 | 54,321 |
| Diluted | 62,957 | 71,249 |

*See accompanying notes to consolidated financial statements.*

71.     The above statements identified in ¶¶ 69-71 were materially false and misleading because the Individual Defendants made false and misleading statements regarding the Company's internal controls, particularly concerning revenue recognition and the integrity of its financial statements.  The Individual Defendants repeatedly assured investors that Harbor Diversified

maintained adequate internal controls and that the Board, particularly through its Audit Committee, provided effective oversight of the Company's financial reporting and risk management processes.

72.     In truth, the Individual Defendants breached their fiduciary duties to the Company by:

a)      Failing to implement and maintain adequate internal controls over the Company's financial reporting and revenue recognition practices;

b)      Making or allowing the Company to make false and misleading statements regarding the effectiveness of its internal controls and the accuracy of its financial statements;

c)      Failing to properly oversee the Company's financial reporting and risk management processes, despite their assurances to the contrary; and

d)      Exposing the Company to significant financial and reputational harm, including potential legal liabilities and regulatory scrutiny.

73.     As a result, the Company had to restate the 2022 Form 10-K revenues stated in paragraph 70 above..

74.     On  May 15, 2023, Harbor Diversified submitted its first quarter 2023 financial report on Form 10-Q to the SEC.[5]  The Q1 2023 Form 10-Q covered the Company's financial performance for the period ending March 31, 2023.  The filing included SOX certifications, which were signed by Defendants Deister and Mackay.  These certifications affirmed three key points: (i) the accuracy of the financial information presented in the report, (ii) the disclosure of any

---

[5] Harbor Diversified, Inc., Quarterly Report (Form 10-Q) (May 15, 2023) ("Q1 2023 Form 10-Q").

significant changes to the Company's internal financial control systems, and (iii) the reporting of any fraudulent activities. By signing these certifications, Defendant Deister and Mackay personally vouched for the integrity of the Company's financial reporting and internal control mechanisms for the quarter in question.

75.    The Q1 2023 Form 10-Q included a statement pursuant to Rule 15d-15(b) of the Exchange Act that assured investors that the Individual Defendants determined that Harbor Diversified's methods for controlling and releasing key information were operating effectively at the end of the quarter and that the Company's systems provided a reasonable level of assurance in terms of their reliability and performance:

> As required by Rule 15d-15(b) under the Exchange Act, our management, including our principal executive officer, principal financial officer and principal accounting officer, carried out an evaluation of the effectiveness of the design and operation of our disclosure controls and procedures (as defined in Rule 15d-15(e) under the Exchange Act) as of March 31, 2023, the last day of the period covered by this [Q1 2023 Form 10-Q].   Based on this evaluation, our management, including our principal executive officer, principal financial officer and principal accounting officer, concluded that, as of March 31, 2023, our disclosure controls and procedures were effective at the reasonable assurance level.

76.    The Q1 2023 Form 10-Q included the following Consolidated Statement of Operations chart containing the Company's revenues:

**Harbor Diversified, Inc. and Subsidiaries**

**Consolidated Statements of Operations (in thousands, except per share amounts)**

| | Three Months Ended March 31, | |
| --- | --- | --- |
| | 2023 | 2022 |
| | (unaudited) | |
| **Operating Revenues** | | |
| Contract revenues | $ 59,037 | $66,968 |
| Contract services and other | 95 | 7 |
| **Total Operating Revenues** | 59,132 | 66,975 |
| **Operating Expenses** | | |
| Payroll and related costs | 29,768 | 26,601 |
| Aircraft fuel and oil | 102 | 51 |
| Aircraft maintenance, materials and repairs | 19,349 | 14,501 |
| Other rents | 1,594 | 1,613 |
| Depreciation, amortization and obsolescence | 6,357 | 6,644 |
| Purchased services and other | 4,442 | 3,765 |
| **Total Operating Expenses** | 61,612 | 53,175 |
| **(Loss) Income from Operations** | (2,480) | 13,800 |
| **Other Income (Expense)** | | |
| Interest income | 1,366 | 784 |
| Interest expense | (1) | — |
| Gain (Loss) on marketable securities | 1,740 | (2,423) |
| Other, net | (13) | — |
| **Total Other Income (Expense)** | 3,092 | (1,639) |
| **Net Income Before Taxes** | 612 | 12,161 |
| **Income Tax (Benefit) Expense** | (270) | 2,898 |
| **Net Income** | $ 882 | $ 9,263 |
| Preferred stock dividends | 252 | 198 |
| Net income available to common stockholders | $ 630 | $ 9,065 |
| **Basic Earnings per share** | $ 0.01 | $ 0.19 |
| **Diluted Earnings per share** | $ 0.01 | $ 0.14 |
| **Weighted average common shares:** | | |
| Basic | 44,980 | 47,638 |
| Diluted | 61,480 | 64,535 |

*See accompanying condensed notes to unaudited consolidated financial statements.*

77.     The above statements identified in ¶¶ 75-77 were materially false and misleading because the Individual Defendants made false and misleading statements regarding the Company's internal controls, particularly concerning revenue recognition and the integrity of its financial statements.   The Individual Defendants repeatedly assured investors that Harbor Diversified maintained adequate internal controls and that the Board, particularly through its Audit Committee, provided effective oversight of the Company's financial reporting and risk management processes.

78.     In truth, the Individual Defendants breached their fiduciary duties to the Company by:

a)      Failing to implement and maintain adequate internal controls over the Company's financial reporting and revenue recognition practices;

b)      Making or allowing the Company to make false and misleading statements regarding the effectiveness of its internal controls and the accuracy of its financial statements;

c)      Failing to properly oversee the Company's financial reporting and risk management processes, despite their assurances to the contrary; and

d)      Exposing the Company to significant financial and reputational harm, including potential legal liabilities and regulatory scrutiny.

79.     As a result, the Company had to restate the Q1 2023 Form 10-Q revenues stated in paragraph 76 above.

80.     On August 14, 2023, Harbor Diversified submitted its second quarter 2022 financial report on Form 10-Q to the SEC.[6]  The Q2 2023 Form 10-Q covered the Company's financial performance for the period ending June 30, 2023.  The filing included SOX certifications, which were signed by Defendants Deister and Mackay.  These certifications affirmed three key points: (i) the accuracy of the financial information presented in the report, (ii) the disclosure of any significant changes to the Company's internal financial control systems, and (iii) the reporting of any fraudulent activities.  By signing these certifications, Defendant Deister and Mackay personally vouched for the integrity of the Company's financial reporting and internal control mechanisms for the quarter in question.

---

[6] Harbor Diversified, Inc., Quarterly Report (Form 10-Q) (August 14, 2023) (Q2 2023 Form 10-Q").

81.     The Q2 2023 Form 10-Q included a statement pursuant to Rule 15d-15(b) of the Exchange Act that assured investors that the Individual Defendants determined that Harbor Diversified's methods for controlling and releasing key information were operating effectively at the end of the quarter and that the Company's systems provided a reasonable level of assurance in terms of their reliability and performance:

> As required by Rule 15d-15(b) under the Exchange Act, our management, including our principal executive officer, principal financial officer and principal accounting officer, carried out an evaluation of the effectiveness of the design and operation of our disclosure controls and procedures (as defined in Rule 15d-15(e) under the Exchange Act) as of June 30, 2023, the last day of the period covered by [Q2 2023 Form 10-Q].  Based on this evaluation, our management, including our principal executive officer, principal financial officer and principal accounting officer, concluded that, as of June 30, 2023, our disclosure controls and procedures were effective at the reasonable assurance level.

82.     The Q2 2023 Form 10-Q included the following Consolidated Statement of Operations chart containing the Company's revenues:

**Harbor Diversified, Inc. and Subsidiaries**

**Condensed Consolidated Statements of Operations (in thousands, except per share amounts)**

| | Three Months Ended June 30, | | Six Months Ended June 30, | |
|---|---|---|---|---|
| | 2023 | 2022 | 2023 | 2022 |
| | (unaudited) | | (unaudited) | |
| **Operating Revenues** | | | | |
| Contract revenues | $ 50,970 | $77,923 | $110,007 | $144,891 |
| Contract services and other | 102 | 7 | 197 | 14 |
| **Total Operating Revenues** | 51,072 | 77,930 | 110,204 | 144,905 |
| **Operating Expenses** | | | | |
| Payroll and related costs | 29,953 | 27,694 | 59,721 | 54,295 |
| Aircraft fuel and oil | 221 | 34 | 323 | 85 |
| Aircraft maintenance, materials and repairs | 17,869 | 16,336 | 37,218 | 30,837 |
| Other rents | 1,474 | 1,657 | 3,068 | 3,270 |
| Depreciation, amortization and obsolescence | 6,370 | 6,674 | 12,727 | 13,318 |
| Purchased services, legal and other | 7,532 | 3,514 | 11,974 | 7,279 |
| **Total Operating Expenses** | 63,419 | 55,909 | 125,031 | 109,084 |
| **(Loss) Income from Operations** | (12,347) | 22,021 | (14,827) | 35,821 |
| **Other Income (Expense)** | | | | |
| Interest income | 1,429 | 1,382 | 2,795 | 2,166 |
| Interest expense | (11) | — | (12) | — |
| (Loss) gain on marketable securities | (795) | (3,602) | 945 | (6,025) |
| Gain on extinguishment of debt | 70 | — | 70 | — |
| Other, net | (1) | (3) | (14) | (3) |
| **Total Other Income (Expense)** | 692 | (2,223) | 3,784 | (3,862) |
| **Net (Loss) Income Before Taxes** | (11,655) | 19,798 | (11,043) | 31,959 |
| **Income Tax (Benefit) Expense** | (2,486) | 4,717 | (2,756) | 7,615 |
| **Net (Loss) Income** | (9,169) | 15,081 | (8,287) | 24,344 |
| Preferred stock dividends | 305 | 198 | 557 | 396 |
| **Net (loss) income available to common stockholders** | $ (9,474) | $14,883 | $ (8,844) | $ 23,948 |
| **Basic (Loss) Earnings per share** | $ (0.21) | $ 0.32 | $ (0.20) | $ 0.51 |
| **Diluted (Loss) Earnings per share** | $ (0.21) | $ 0.24 | $ (0.20) | $ 0.38 |
| **Weighted average common shares:** | | | | |
| Basic | 44,277 | 46,519 | 44,626 | 47,075 |
| Diluted | 44,277 | 63,019 | 44,626 | 63,773 |

*See accompanying condensed notes to unaudited condensed consolidated financial statements.*

83.     The above statements identified in ¶¶ 81-83 were materially false and misleading because the Individual Defendants made false and misleading statements regarding the Company's internal controls, particularly concerning revenue recognition and the integrity of its financial statements.   The Individual Defendants repeatedly assured investors that Harbor Diversified maintained adequate internal controls and that the Board, particularly through its Audit Committee, provided effective oversight of the Company's financial reporting and risk management processes.

84.     In truth, the Individual Defendants breached their fiduciary duties to the Company by:

a)      Failing to implement and maintain adequate internal controls over the Company's financial reporting and revenue recognition practices;

      b)      Making or allowing the Company to make false and misleading statements regarding the effectiveness of its internal controls and the accuracy of its financial statements;

      c)      Failing to properly oversee the Company's financial reporting and risk management processes, despite their assurances to the contrary; and

      d)      Exposing the Company to significant financial and reputational harm, including potential legal liabilities and regulatory scrutiny.

85.     As a result, the Company had to restate the Q2 2023 Form 10-Q revenues stated in paragraph 82 above.

86.     On November 14, 2023, Harbor Diversified submitted its third quarter 2022 financial report on Form 10-Q to the SEC.[7]  The Q3 2023 Form 10-Q covered the Company's financial performance for the period ending September 30, 2023.  The filing included SOX certifications, which were signed by Defendants Deister and Mackay.  These certifications affirmed three key points: (i) the accuracy of the financial information presented in the report, (ii) the disclosure of any significant changes to the Company's internal financial control systems, and (iii) the reporting of any fraudulent activities.  By signing these certifications, Defendant Deister and Mackay personally vouched for the integrity of the Company's financial reporting and internal control mechanisms for the quarter in question.

87.     The Q3 2023 Form 10-Q included a statement pursuant to Rule 15d-15(b) of the Exchange Act that assured investors that the Individual Defendants determined that Harbor Diversified's methods for controlling and releasing key information were operating effectively at

---

[7] Harbor Diversified, Inc., Quarterly Report (Form 10-Q) (November 14, 2023) ("Q3 2023 Form 10-Q").

the end of the quarter and that the Company's systems provided a reasonable level of assurance in terms of their reliability and performance:

> As required by Rule 15d-15(b) under the Exchange Act, our management, including our principal executive officer, principal financial officer and principal accounting officer, carried out an evaluation of the effectiveness of the design and operation of our disclosure controls and procedures (as defined in Rule 15d-15(e) under the Exchange Act) as of September 30, 2023, the last day of the period covered by this [Q3 2023 Form 10-Q].  Based on this evaluation, our management, including our principal executive officer, principal financial officer and principal accounting officer, concluded that, as of September 30, 2023, our disclosure controls and procedures were effective at the reasonable assurance level.

88.    The Q3 2023 Form 10-Q included the following Consolidated Statement of Operations chart containing the Company's revenues:

**Harbor Diversified, Inc. and Subsidiaries**

**Condensed Consolidated Statements of Operations (in thousands, except per share amounts)**

| | Three Months Ended September 30, | | Nine Months Ended September 30, | |
|---|---|---|---|---|
| | 2023 | 2022 | 2023 | 2022 |
| | (unaudited) | | (unaudited) | |
| **Operating Revenues** | | | | |
| Contract revenues | $ 49,958 | $ 68,389 | $ 159,965 | $ 213,280 |
| Contract services and other | 98 | 21 | 295 | 35 |
| **Total Operating Revenues** | 50,056 | 68,410 | 160,260 | 213,315 |
| **Operating Expenses** | | | | |
| Payroll and related costs | 29,444 | 26,801 | 89,165 | 81,096 |
| Aircraft fuel and oil | 115 | 49 | 438 | 134 |
| Aircraft maintenance, materials and repairs | 11,175 | 17,494 | 48,393 | 48,331 |
| Other rents | 1,459 | 1,617 | 4,527 | 4,887 |
| Depreciation, amortization and obsolescence | 6,398 | 6,639 | 19,125 | 19,957 |
| Purchased services, legal and other | 6,537 | 3,310 | 18,511 | 10,589 |
| **Total Operating Expenses** | 55,128 | 55,910 | 180,159 | 164,994 |
| **(Loss) Income from Operations** | (5,072) | 12,500 | (19,899) | 48,321 |
| **Other Income (Expense)** | | | | |
| Interest income | 1,540 | 1,732 | 4,335 | 3,898 |
| Interest expense | — | — | (12) | — |
| Loss on marketable securities | (955) | (3,749) | (10) | (9,774) |
| Gain on extinguishment of debt | — | 53 | 70 | 53 |
| Other, net | — | (7) | (14) | (10) |
| **Total Other Income (Expense)** | 585 | (1,971) | 4,369 | (5,833) |
| **Net (Loss) Income Before Taxes** | (4,487) | 10,529 | (15,530) | 42,488 |
| Income Tax (Benefit) Expense | (799) | 2,507 | (3,555) | 10,122 |
| **Net (Loss) Income** | (3,688) | 8,022 | (11,975) | 32,366 |
| Preferred stock dividends | 358 | 198 | 915 | 594 |
| **Net (loss) income available to common stockholders** | $ (4,046) | $ 7,824 | $ (12,890) | $ 31,772 |
| Basic (Loss) Earnings per share | $ (0.09) | $ 0.17 | $ (0.29) | $ 0.68 |
| Diluted (Loss) Earnings per share | $ (0.09) | $ 0.13 | $ (0.29) | $ 0.50 |
| **Weighted average common shares:** | | | | |
| Basic | 43,654 | 45,776 | 44,299 | 46,637 |
| Diluted | 43,654 | 62,276 | 44,299 | 63,268 |

*See accompanying condensed notes to unaudited condensed consolidated financial statements.*

89.    The above statements identified in ¶¶ 86-88 were materially false and misleading because the Individual Defendants made false and misleading statements regarding the Company's

internal controls, particularly concerning revenue recognition and the integrity of its financial statements. The Individual Defendants repeatedly assured investors that Harbor Diversified maintained adequate internal controls and that the Board, particularly through its Audit Committee, provided effective oversight of the Company's financial reporting and risk management processes.

90.     In truth, the Individual Defendants breached their fiduciary duties to the Company by:

a)     Failing to implement and maintain adequate internal controls over the Company's financial reporting and revenue recognition practices;

b)     Making or allowing the Company to make false and misleading statements regarding the effectiveness of its internal controls and the accuracy of its financial statements;

c)     Failing to properly oversee the Company's financial reporting and risk management processes, despite their assurances to the contrary; and

d)     Exposing the Company to significant financial and reputational harm, including potential legal liabilities and regulatory scrutiny.

91.     As a result, the Company had to restate the Q3 2023 Form 10-Q revenues stated in paragraph 88 above.

## THE TRUTH IS REVEALED

92.     On March 29, 2024, Harbor Diversified filed a current report on Form 8-K with the SEC[8] revealing that investors should no longer rely upon the Q1 2022 Form 10-Q, Q2 2022 Form

---

[8] Harbor Diversified, Inc., Current Report (Form 8-K) (March 29, 2024) ("March 29, 2024 Current Report").

10-Q, Q3 2022 Form 10-Q,  2022 Form 10-K,  Q1 2023 Form 10-Q, Q2 2023 Form 10-Q,  and the Q3 2023 Form 10-Q, and that these needed to be restated due to "misstatements contained in such financial statements."

93.     According to the March 29, 2024 Current Report, the misstatement stemmed from improper revenue recognition related to a capacity purchase agreement between Air Wisconsin (a Harbor Diversified subsidiary) and United Airlines.  Approximately $52.3 million in revenue and interest income was incorrectly recognized, violating Accounting Standards Codification ("ASC") 606, Revenue from Contracts with Customers.  Consequently, Harbor Diversified needed to report a material weakness in its internal control over financial reporting for 2023.  Management concluded that the Company's internal controls and disclosure procedures were ineffective during the periods in question.  Specifically, the March 29, 2024 Current Report stated as follows:

> On March 26, 2024, the audit committee (the "Audit Committee") of the board of directors of Harbor Diversified, Inc. (the "Company") concluded, after considering the recommendations of management, that the Company's previously issued (i) consolidated financial statements and related disclosures as of and for the year ended December 31, 2022 contained in the Company's Annual Report on Form 10-K, (ii) interim consolidated financial statements and related disclosures contained in the Quarterly Reports on Form 10-Q as of and for the first three quarters of the year ended December 31, 2022, and (iii) interim consolidated financial statements and related disclosures contained in the Quarterly Reports on Form 10-Q as of and for the first three quarters of the year ended December 31, 2023 (collectively, the "Non-Reliance Periods") should no longer be relied upon due to misstatements contained in such financial statements, and that such financial statements should be restated.

> The Audit Committee's conclusion was based on management's review of the accounting for certain revenue under the [United Agreement] previously entered into between [Air Wisconsin], a wholly owned subsidiary of the Company, and [United]. As discussed in greater detail [], management determined that the decision to recognize all of the approximately $52.3 million in revenue and interest income (the "Disputed Amounts") in the consolidated financial statements and related disclosures prepared for the Non-Reliance Periods relating to certain disputed amounts under the United Agreement was not consistent with [ASC 606].  The Audit Committee discussed its conclusion and management's determination, and the other matters described in this [2024] Current Report, with

the Company's independent registered public accounting firm, Grant Thornton LLP ("Grant Thornton").

*       *       *

## Accounting Analysis

Upon its receipt of the [a]rbitration [a]ward, the Company commenced an analysis of the complex accounting treatment leading to the recognition of the Disputed Amounts in revenue and interest income in light of the unexpected outcome of the arbitration.  Following extensive discussions between Company management and Grant Thornton, as well as consultation between management and additional accounting and legal advisors, the Company concluded that (i) its prior determination as to the amount of the disputed revenue and interest income under the United Agreement was inconsistent with the guidance in ASC 606, resulting in an accounting error as that concept is defined in the accounting guidance, and (ii) its financial statements for the Non-Reliance Periods should be restated.  Although cumulative revenue for the Non-Reliance Periods will change by approximately $52.3 million, this will be partially offset by changes to the provision for income taxes in 2022 and an income tax benefit in 2023 on the statements of operations included in the consolidated financial statements.  In addition, the balance sheets included in the consolidated financial statements will change to remove the related receivables from United, as well as take into account the related changes to the income tax provision/benefit.  The Company also expects to file amended tax returns and seek reimbursement of certain tax payments made based on the previously recognized revenue and interest income.  As a result, the Company expects to record an income tax receivable related to the amended returns.  The Company continues to assess the scope of the expected adjustments to the consolidated financial statements.

*       *       *

## Controls and Procedures Assessment

Company management continues to assess its internal control over financial reporting and disclosure controls and procedures in light of its determination to restate the financial statements.  The Company will report a material weakness in internal control over financial reporting in its Annual Report on Form 10-K for the year ended December 31, 2023.  Because of the weakness, the Company's management concluded that it did not maintain effective internal control over financial reporting and disclosure controls and procedures for the Non-Reliance Periods.  Company management, at the direction of the Audit Committee, continues to evaluate appropriate remediation actions.

35

## AN INVESTOR FILES A SECURITIES CLASS ACTION

94.     On May 7, 2024  a purported purchaser of Company stock filed a securities class action complaint, captioned *Kothari v Harbor Diversified, Inc. et al.*, Case No.  1:24-cv-00556 in the United States District Court for the Eastern District of Wisconsin against Harbor Diversified and Defendants Deister and Mackay (the "Securities Class Action").  The Securities Class Action alleges that throughout the class period of May 10, 2022 and March 29, 2024, Defendants made materially false and/or misleading statements, failing to disclose material adverse facts about the Company's business, operations, and prospects.

### THE INDIVIDUAL DEFENDANTS' MISCONDUCT DIRECTLY AND PROXIMATELY CAUSES DAMAGES TO HARBOR DIVERSIFIED

95.     As a result of the Individual Defendants' improprieties, Harbor Diversified disseminated improper public statements concerning Harbor Diversified's operations, prospects, and internal controls.  This misconduct has devastated Harbor Diversified's credibility.

96.     As a direct and proximate result of the Individual Defendants' actions, Harbor Diversified has expended, and will continue to expend, significant sums of money defending and paying any settlement in the Securities Class Action.

97.     As a direct and proximate result of the Individual Defendants' actions as alleged above, Harbor Diversified's market capitalization has been substantially damaged, losing millions of dollars in value because of the conduct described herein.

98.     Lastly, the actions of the Individual Defendants have irreparably damaged Harbor Diversified's corporate image and goodwill.  For at least the foreseeable future, Harbor Diversified will suffer from what is known as the "liar's discount," a term applied to the stocks of companies that have been implicated in illegal behavior and have misled the investing public, such that Harbor Diversified's ability to raise equity capital or debt on favorable terms in the future is now impaired.

**CONSPIRACY, AIDING AND ABETTING, AND CONCERTED ACTION**

99.     In committing the wrongful acts alleged herein, the Individual Defendants have pursued, or joined in the pursuit of, a common course of conduct, and have acted in concert with and conspired with one another in furtherance of their wrongdoing.  The Individual Defendants caused the Company to conceal the true facts as alleged herein.  The Individual Defendants further aided and abetted and/or assisted each other in breaching their respective duties.

100.    The purpose and effect of the conspiracy, common enterprise, and/or common course of conduct were, among other things, to (i) facilitate and disguise the Individual Defendants' violations of law, including breaches of fiduciary duty and unjust enrichment; (ii) conceal adverse information concerning the Company's operations, financial condition, future business prospects and internal controls; and (iii) artificially inflate the Company's stock price.

101.    The Individual Defendants accomplished their conspiracy, common enterprise, and/or common course of conduct by causing the Company purposefully, recklessly, or with gross negligence to engage in improper accounting methods, conceal material facts, fail to correct such misrepresentations, and violate applicable laws.  In furtherance of this plan, conspiracy, and course of conduct, Individual Defendants collectively and individually took the actions set forth herein.  The Individual Defendants described herein were direct, necessary, and substantial participants in the common enterprise, and/or common course of conduct complained here because the action described herein occurred under the authority and approval of the Board.

102.    Each of the Individual Defendants aided, abetted, and rendered substantial assistance in the wrongs complained of herein.  In taking such actions to substantially assist the commission of the wrongdoing complained of herein, each of the Individual Defendants acted with actual or constructive knowledge of the primary wrongdoing, either took direct part in or

substantially assisted the accomplishment of that wrongdoing and was or should have been aware of his or her overall contribution to and furtherance of the wrongdoing.

103.    At all times relevant hereto, each of the Individual Defendants was the agent of each of the other Individual Defendants and Harbor Diversified and was at all times acting within the course and scope of such agency.

## PLAINTIFF HAS BEEN A STOCKHOLDER SINCE THE ALLEGED WRONGDOING AND WILL FAIRLY AND ADEQUATELY REPRESENT THE COMPANY'S AND ITS STOCKHOLDERS' INTERESTS

104.    Plaintiff incorporates by reference and realleges each and every allegation set forth above as though fully set forth herein.

105.    Plaintiff brings this action derivatively in the right and for the benefit of the Company to redress the Individual Defendants' misconduct.

106.    Plaintiff is an owner of Harbor Diversified common stock and has been an owner of Harbor Diversified common stock since the wrongdoing alleged herein.

107.    Plaintiff has hired counsel experienced in conducting derivative litigation and will adequately and fairly represent the interests of the Company and its stockholders in enforcing and prosecuting the Company's rights.

## DEMAND IS FUTILE

### Demand Is Futile Because Each Member of the Board Faces a Substantial Likelihood of Personal Liability

108.    At the time Plaintiff commenced this action, the Board consisted of the three Director Defendants: Bartlett, Bederman, and Degen.  The Director Defendants are incapable of making an independent and disinterested decision to institute and vigorously prosecute this action.

109.    The Director Defendants all face a substantial likelihood of liability for their individual misconduct.  The Director Defendants were directors throughout the time of the false

and misleading statements and, as such, had a fiduciary duty to ensure the accuracy of the Company's SEC filings, press releases, and other public statements and presentations concerning Harbor Diversified's business, operations, prospects, internal controls, and financial statements.

110.    Moreover, the Director Defendants owed and owe a duty to, in good faith and with due diligence, exercise reasonable inquiry, oversight, and supervision to ensure that the Company's internal controls were sufficiently robust and effective and were being implemented effectively, and to ensure that the Board's duties were being discharged in good faith and with the required diligence and due care.  Instead, they knowingly and consciously reviewed, authorized, and/or caused the publication of the materially false and misleading statements discussed above that caused the Company's stock to trade at artificially inflated prices.

111.    The Director Defendants face a substantial likelihood of personal liability because of their conscious and knowing authorization of false and misleading statements, their failure to timely correct such statements, their failure to take necessary and appropriate steps to ensure that the Company's internal controls were sufficiently robust and effective and were being implemented effectively, and their failure to take necessary and appropriate steps to ensure that the Board's duties were being discharged in good faith and with the required diligence constitute breaches of the fiduciary duties of loyalty and good faith, for which the Director Defendants face a substantial likelihood of liability.

112.    If the Director Defendants were to bring a suit on behalf of Harbor Diversified to recover damages sustained as a result of this misconduct, they would expose themselves to significant liability.  For this reason, Plaintiff's making a demand would be futile.

***The Audit Committee Defendants Face a***
***Greater Likelihood of Personal Liability***

113.    The Audit Committee Defendants (Defendants Bederman and Degen), as members of the Audit Committee during the Relevant Period, participated in and knowingly approved the filing of false financial statements.  More specifically, as members of the Audit Committee, the Audit Committee Defendants were obligated to review the Company's annual and quarterly reports to ensure their accuracy.  Instead, the Audit Committee Defendants, as members of the Audit Committee, failed to ensure the integrity of the Company's financial statements and financial reporting process and its systems of internal accounting and financial controls and other financial information provided by the Company, as required by the Audit Committee Charter.  For this reason, the Audit Committee Defendants cannot exercise disinterested business judgment in considering a demand.

## THE DIRECTOR DEFENDANTS  LACK INDEPENDENCE

114.    The Director Defendants (Bartlett, Bederman, and Degen) lack independence.  The 2022 Form 10-K concedes that Bartlett is not an independent director.

115.    Defendants Bederman and Degen have served on the board of managers of Air Wisconsin since March 2020, and Defendant Bartlett served on the Air Wisconsin board of managers for over 25 years.  Accordingly, based on their personal and business relationship, the Director Defendants could not exercise independent business judgment in considering a demand to investigate and prosecute this action.  Thus, demand is futile as to Defendant's Bartlett, Bederman, and Degen.

**FIRST CAUSE OF ACTION**
**Against the Individual Defendants for Breach of Fiduciary Duties**

116.     Plaintiff incorporates by reference and realleges each and every allegation set forth above as though fully set forth herein.

117.     Each Individual Defendant owed to the Company the duty to exercise candor, good faith, and loyalty in the management and administration of Harbor Diversified's business and affairs.

118.     Each of the Individual Defendants violated and breached his or her fiduciary duties of candor, good faith, loyalty, reasonable inquiry, oversight, and supervision.

119.     The Individual Defendants' conduct set forth herein was due to their intentional or reckless breach of the fiduciary duties they owed to the Company.  The Individual Defendants intentionally or recklessly breached or disregarded their fiduciary duties to protect the rights and interests of Harbor Diversified.

120.     In breach of their fiduciary duties owed and owe to Harbor Diversified, the Individual Defendants willfully or recklessly made, or caused or permitted the Company to make, false and misleading statements and omissions of material fact regarding the Company's internal controls, particularly concerning revenue recognition and the integrity of its financial statements. The Individual Defendants repeatedly assured investors that Harbor Diversified maintained adequate internal controls and that the Board, particularly through its Audit Committee, provided effective oversight of the Company's financial reporting and risk management processes.  In truth, the Individual Defendants breached their fiduciary duties to the Company by:

        a)     Failing to implement and maintain adequate internal controls over the Company's financial reporting and revenue recognition practices;

b)    Making or allowing the Company to make false and misleading statements regarding the effectiveness of its internal controls and the accuracy of its financial statements;

c)    Failing to properly oversee the Company's financial reporting and risk management processes, despite their assurances to the contrary; and

d)    Exposing the Company to significant financial and reputational harm, including potential legal liabilities and regulatory scrutiny.

121.    Accordingly, Harbor Diversified's public statements were materially false, misleading, and lacked a reasonable basis during the Relevant Period, thereby causing the stock to trade at artificially inflated prices.

122.    The Individual Defendants failed to and caused the Company to fail to rectify any of the wrongs described herein or correct the false and misleading statements and omissions of material fact referenced herein, thereby, rendering themselves personally liable to the Company for breaching their fiduciary duties.

123.    The Individual Defendants also failed to maintain an adequate system of oversight, disclosure controls and procedures, and internal controls in breach of their fiduciary duties.

124.    The Individual Defendants had actual or constructive knowledge that the Company issued materially false and misleading statements, and they failed to correct the Company's public statements.  The Individual Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein or acted with reckless disregard to the truth in that they failed to ascertain and disclose such facts even though such facts were available to them.  Such material misrepresentations and omissions were committed knowingly or recklessly and for the purpose and effect of artificially inflating the price of the Company's securities.

125.    The Individual Defendants had actual or constructive knowledge that they had caused the Company to improperly engage in the fraudulent schemes set forth herein and to fail to maintain adequate internal controls.  The Individual Defendants had actual knowledge that the Company was engaging in the fraudulent schemes set forth herein, and that internal controls were not adequately maintained or acted with reckless disregard for the truth in that they caused the Company to improperly engage in the fraudulent schemes and to fail to maintain adequate internal controls, even though such facts were available to them.  Such improper conduct was committed knowingly or recklessly and for the purpose and effect of artificially inflating the price of the Company's securities.  The Individual Defendants, in good faith, should have taken appropriate action to correct the schemes alleged herein and to prevent them from continuing to occur.

126.    These actions were not a good-faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

127.    As a direct and proximate result of the Individual Defendants' breaches of their fiduciary obligations, Harbor Diversified has sustained and continues to sustain significant damages.  As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

**SECOND CAUSE OF ACTION**
**Against the Securities Class Action Defendants**
**for Contribution under Sections 10(b) and 21D of the Exchange Act and SEC Rule 10b-5**

128.    Plaintiff incorporates by reference and realleges each and every allegation set forth above as though fully set forth herein.

129.    Harbor Diversified and the Securities Class Action Defendants (Deister and Mackay) are named as defendants in the Securities Class Action, which asserts claims under the federal securities laws for violations of Sections 10(b) and 21D of the Exchange Act and SEC Rule

10b-5.  If the Company is found liable in the Securities Class Action for these violations of the federal securities laws, the Company's liability will be in whole or in part due to the Securities Class Action Defendants' willful and/or reckless violations of their obligations as officers and/or directors of Harbor Diversified.

130.    Because of their positions of control and authority as officers and/or directors of Harbor Diversified, the Securities Class Action Defendants were able to and did, directly and/or indirectly, exercise control over the business and corporate affairs of Harbor Diversified, including the wrongful acts complained of herein and in the Securities Class Action.

131.    Accordingly, the Securities Class Action Defendants are liable under Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and SEC Rule 10b-5, which create an implied private right of action for contribution, and Section 21D of the Exchange Act, 15 U.S.C. § 78u-4(f), which governs the application of a private right of action for contribution arising out of violations of the Exchange Act.

132.    As such, Harbor Diversified is entitled to receive all appropriate contribution or indemnification from the Securities Class Action Defendants.

### THIRD CAUSE OF ACTION
### Against the Individual Defendants for Unjust Enrichment

133.    Plaintiff incorporates by reference and realleges each and every allegation set forth above as though fully set forth herein.

134.    By their wrongful acts, violations of law, and false and misleading statements and omissions of material fact that they made or caused to be made, the Individual Defendants were unjustly enriched at the expense of, and to the detriment of, Harbor Diversified.

135.    The Individual Defendants benefitted financially from the improper conduct, received unjustly lucrative bonuses tied to the false and misleading statements, and received

bonuses, stock options, or similar compensation from Harbor Diversified that was tied to the performance or artificially inflated valuation of Harbor Diversified, or received compensation that was unjust in light of the Individual Defendants' bad faith conduct.

136.    Plaintiff, as a stockholder and representative of Harbor Diversified, seeks restitution from the Individual Defendants and seeks an order from this Court disgorging all profits—including from insider sales, benefits, and other compensation, including any performance-based or valuation-based compensation—obtained by the Individual Defendants from their wrongful conduct and breach of their fiduciary duties.

137.    Plaintiff, on behalf of Harbor Diversified, has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment as follows:

A.    Declaring that Plaintiff may maintain this derivative action on behalf of Harbor Diversified and that Plaintiff is a proper and adequate representative of the Company;

B.    Awarding the amount of damages sustained by the Company as a result of the Individual Defendants' breaches of fiduciary duties and violations of the federal securities laws;

C.    Awarding prejudgment interest to the Company;

D.    Granting appropriate equitable relief to remedy Individual Defendants' breaches of fiduciary duties and other violations of law;

E.    Awarding to Plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees and costs and expenses; and

F.    Granting such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated:  August 12, 2024

*/s/ P. Bradford deLeeuw*

P. Bradford deLeeuw (DE Bar # 3569)
DELEEUW LAW LLC
1301 Walnut Green Road
Wilmington, DE 19807
Tel: (302) 274-2180

OF COUNSEL:

Fax: (302) 351-6905 (fax)
brad@deleeuwlaw.com

Lawrence P. Eagel
(*pro hac vice to be submitted*)
Melissa A. Fortunato
(*pro hac vice to be submitted*)
BRAGAR EAGEL & SQUIRE, P.C.
810 Seventh Avenue, Suite 620
New York, New York 10019
Tel: (212) 308-5858
Fax: (212) 214-0506
eagel@bespc.com
fortunato@bespc.com

*Attorneys for Plaintiff Adam Cooke*

Badge Humphries
(*pro hac vice to be submitted*)
BRAGAR EAGEL & SQUIRE, P.C.
2113 Middle Street, Suite 305
Sullivan's Island, South Carolina 29482
Tel: (843) 883-7444
humphries@bespc.com